[Civ. No. 1524. Third Appellate District.—March 11, 1918.]

## MRS. MINNIE JOLLY, Appellant, v. CHAS. J. McCOY, Respondent.

ACTION FOR CONVERSION — SALE OF WIFE'S PROPERTY — JUDGMENT AGAINST HUSBAND—EVIDENCE—BURDEN OF PROOF.—In an action by a wife against the sheriff for conversion of her separate property taken and sold under a writ of execution issued in pursuance of a judgment rendered against her husband, the burden to prove her ownership of the property is upon her.

ID.—HUSBAND AND WIFE—POSSESSION OF PERSONAL PROPERTY BY HUSBAND—PRESUMPTION.—Where personal property was in the posses-

sion of the husband and treated by him as though it were community or his own separate property, the presumption was that such was its character by virtue of subdivision 12, section 1963, of the Code of Civil Procedure.

Id.—Determination of Character of Property—Questionable Instruction—Lack of Prejudice.—In an action by a wife against the sheriff for conversion of personal property seized and sold by such officer under a writ of execution issued on a judgment in an action against her husband, an instruction that in determining the question as to who was the owner of the property claimed by plaintiff, the jury had a right to consider the manner in which the property was "acquired" and by whom, where it was kept, how it was handled and by whom controlled, etc., while lying close to the line between law and fact, was without prejudice, since the word "acquire" has the meaning of procured, as well as the meaning of obtaining as one's own.

Id.—Effect of Use of Property by Husband—Objectionable Instructions.—Instructions that the use of the personal property by the husband and his control of the same or any part thereof did not change its status from the wife's separate property, and that the mere fact that the property was seemingly in the possession and apparent control of the husband did not estop the wife from claiming the same, or in any wise deprive her of her separate property, were properly refused, as assuming that the property was the separate estate of the wife.

Id.—Bank Deposit by Wife in Names of Husband and Wife—Ownership of Purchased Property—Instruction.—The refusal to instruct the jury that the deposit of certain insurance money by the wife in a bank in her own name and in the name of her husband was not a gift to him, unless she then intended to give the same absolutely to him, and that it was the intent with which the deposit was made that must appear by a preponderance of evidence, and so long as she held the bank-book and the control of the money, it could not be in law a gift to him, is without prejudice to the wife where the jury was instructed that the insurance money was the wife's separate property, and that if she used it in the purchase of any of the property in controversy such property was also her separate property, and not liable for the debts of the husband.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, and E. Ray Manwell, for Appellant.

W. H. Carlin, for Respondent.

BURNETT, J.—The action was for damages for conversion of certain personal property of the alleged value of $1,871. The defendant is the sheriff of the county, and he justified his taking and sale of the property under a writ of execution issued in pursuance of a judgment rendered in the superior court of said county against A. Jolly, the husband of the plaintiff herein.

The claim of appellant was and is that said property sold under said execution was her separate estate, and therefore not liable for the debts of the husband. Plaintiff, her husband, and their son all testified to facts, from which the jury might legally have drawn the inference that her claim was just, and if the verdict had been in her favor, we should have no hesitation in affirming it as amply supported. But the jury distrusted these witnesses, and it is apparent, also, that the trial judge was not convinced that they were entitled to full credit, as he denied the motion for a new trial. Since we have not had the witnesses before us, we cannot say that such attitude of the court and jury was unwarranted. Indeed, we may add that the printed record of their testimony reveals certain circumstances that tend to justify the suspicion with which their statements were undoubtedly received by the jury. These we need not stop to particularize.

As to the support for the verdict, unless the jury believed the story told by said witnesses, it was their duty to find for the defendant, since the burden of proof was upon the plaintiff. The peculiar province of the jury in such matters is fully considered by this court in *Clark* v. *Tulare Lake Dredging Co.*, 14 Cal. App. 414, [112 Pac. 564], and in this connection it is sufficient to refer to that decision.

Besides, the evidence showed that all of the property was in the possession of said A. Jolly and treated by him as though it were community or his own separate property. From this circumstance, the presumption—disputable, it is true—would follow that such was its character. (Code Civ. Proc., sec. 1963, subd. 12.)

The observation may not be out of place that fraudulent claims as to the ownership of property under similar conditions are often made, and the court or jury should scrutinize with care an asserted right which has been quiescent until credit may have been extended on the faith that such right does not exist. No doubt, such claims are sometimes genuine,

36 Cal. App.—31

and, where so established, they should be protected, but it is hardly to be expected that they will be regarded without some suspicion. We may add that, as to a portion of the property which plaintiff claims she obtained from her husband, the jury was justified in concluding that there was not an immediate delivery and continuous change of possession within the contemplation of section 3440 of the Civil Code.

Upon the whole it cannot be said that the verdict of the jury lacks legal support.

Another question seriously argued arises over the action of the court in reference to the instructions. Most of them are unobjectionable, however, and therein were presented quite fully the legal principles bearing upon the theory of plaintiff as well as of defendant, and the general axioms that should be regarded by the jury in every case.

The following, though, is somewhat open to criticism: "I instruct you that in determining the question as to who was the owner of the property claimed by plaintiff herein, at the time of the levy of the writ of execution therein by the defendant, you have a right, and it is your duty, to consider the manner in which said property was acquired and by whom, where it was kept, how it was handled and by whom controlled, whether or not it was mingled with other property admittedly belonging to the husband of plaintiff, whether or not there was anything about the use, possession, or control of said property, or anything at all about the use, possession, or control of said property, or anything at all in connection with the property to indicate that it belonged to any other person other than the husband of plaintiff, and all the facts and circumstances bearing upon the question as the same is made to appear to you from the evidence, and if from the consideration of all thereof you are not satisfied by a preponderance of the evidence that said property was the separate property of plaintiff at the date of the levy of the writ of execution, your verdict should be in favor of defendant."

The instruction lies close to the line between law and fact. It is not strictly a direction as to the weight of the evidence, but it seems rather objectionable as emphasizing certain features that were developed by the testimony in the case. No doubt, respondent in his argument to the jury laid particular stress upon the facts suggested in the instruction, and the peculiar phraseology thereof might be seized upon by the

jury as an argument in favor of the defendant. In other respects, also, the instruction is somewhat confusing. The jury was directed "to consider the manner in which said property was acquired and by whom." One meaning of the word "acquire" is to "obtain as one's own." An ultimate fact to be determined by the jury was really, "by whom was the property acquired?" The instruction, however, puts this ultimate fact upon the same footing as certain evidentiary matters, and directs the jury to consider this in connection with other facts to determine who was the owner of the property. Whereas, it would seem to be true that if they were satisfied as to who had "acquired" the property, that would be equivalent to a determination as to who was the owner. If the instruction had declared that in the determination of "who had acquired or owned the property the jury should consider the manner in which the property was obtained, where it was kept, how it was used, and whether mingled with other property of the husband," etc., there would be less ground for criticism.

But it is fair to say that the word *acquired* has also the meaning of *procured,* and it is not unreasonable to hold that the jury so understood it. Indeed, while we think the instruction is somewhat obscure and of doubtful propriety, the common understanding would probably accept it as a direction to consider the manner in which the property was procured and how it was used, with other circumstances disclosed by the evidence, in the determination of the ownership of the property. Besides, the other instructions were so clear and favorable to appellant, that we are satisfied she suffered no prejudice in this matter.

Among certain instructions requested by the plaintiff and refused by the court was the following: "The use of the property by the husband and his control of the same or any part of said personal property of the wife did not change the status of the property from the plaintiff's separate property or make it liable to levy and sale to pay the debt of Jolly & Son, or either of them."

This was also refused: "The mere fact that the property was seemingly in the possession and apparent control of the husband does not estop the wife from claiming the stock or in any wise deprive the wife of her separate property therein."

Both instructions were objectionable in assuming that the

property was the separate estate of the wife—the very question which the jury was to determine. If appellant had requested the court to instruct the jury that the mere possession, use, and control of the property by the husband was not inconsistent with the ownership of the wife or was not sufficient to transfer title, it would probably have been given. To say that it ''did not change the status of the property from the plaintiff's separate property'' was, of course, to assume that it had such status. If the phrase ''would not'' had been used, the situation might be different.

Another instruction refused was this: ''The deposit of the insurance money by the plaintiff in the bank in her own name and in the name of the husband was not a gift to him unless she then intended to give the same absolutely to him, and it is the intent with which that deposit was made in the bank that must appear by a preponderance of the evidence to have been to divest herself of all interest in the money and make it the money of her husband, and so long as she held the bankbook and the control of the money, it could not in law be a gift to her husband.''

It appears from the evidence without any question that plaintiff had received something over two thousand five hundred dollars as insurance money and had deposited it as suggested in said proposed instruction. It was the claim of appellant that with this money she purchased the property in controversy here, and, to meet the possible conclusion that the money became community property by reason of the form of the deposit, the instruction was requested.

The court, however, virtually instructed the jury that the money was the separate property of the wife, and also ''that if this money thus received by plaintiff was by her or under her instructions used to buy some or all of the personal property described in the complaint, then such personal property, thus purchased, became and was her separate property and was not liable to levy and sale to pay the debts of her husband, A. Jolly and Son, Raphael Jolly, or that of either of them.''

As a matter of law, therefore, the court instructed the jury that, under the evidence this money was the separate property of the plaintiff. She could not ask for more as to this feature of the case, and the proposed instruction could have been of no greater benefit to her.

Indeed, it is quite apparent that since the court instructed the jury that this insurance money was the separate property of the wife, and, that if she used it in the purchase of any of the property in controversy, that property was also her separate property and not liable for the debts of her husband, it left only one question for the jury to determine, and that is whether she so purchased it. If they believed she did purchase it with said money, under this instruction of the court, they must have found for the plaintiff notwithstanding any possession, use, or control by the husband. It appears clear, therefore, that no specific instruction as to a change of title by virtue of the use of the property could have been of any avail to appellant, and, also, that the instruction given on behalf of respondent, to which we have adverted, could only have been considered by the jury in deciding whether any of the property was actually purchased with the insurance money. It is thus to be seen how exceedingly favorable to appellant was the law as presented by the court.

The question of the intention of the wife to make a gift to the community or to her husband and the consideration of the use and control of the property were entirely eliminated, and the jury were expressly told that if any of the insurance money was used to purchase any of said property, they must find it to be plaintiff's separate property and not subject to execution. Respondent might have some cause to complain of this instruction, but not so the appellant.

While the case is not altogether free from difficulty, we think it cannot be said that the verdict is unjust.

The judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 9, 1918.